UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ADAM R. BROWN,                          :

            Petitioner,        :    03 Civ. 3320 (PAC)(HBP)

    -against-                     :    REPORT AND
                                     RECOMMENDATION
SUSAN SCHULTZ, et ano.,                 :

            Respondent.        :

----------------------------------X


       PITMAN, United States Magistrate Judge:


       TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I. Introduction


       Petitioner Adam R. Brown seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating a judgment of conviction entered on June 23, 1999,

after a jury trial in the Supreme Court of the State of New York,

New York County (Irizarry, J.), for one count of criminal sale of

a controlled substance in the third degree, in violation of New

York Penal Law Section 220.39(1).  By that judgment, petitioner

was sentenced as a second felony offender to an indeterminate

term of imprisonment of seven to fourteen years.  On April 9,

2002, the Appellate Division of the Supreme Court of the State of

New York, First Department, modified the sentence as a matter of

discretion to an indeterminate term of five to ten years.
Petitioner was released from custody on June 6, 2003 and is
currently on parole.

For the reasons set forth below, I respectfully recom-
mend that the petition be denied.

II.  Facts

A.  Facts Underlying
    Petitioner's Conviction

1.  The Prosecution's Case at Trial

On December 7, 1998, New York City Police Detectives
Jeffery Harris and Hector Vargas were conducting an undercover
"buy and bust" operation in the vicinity of Bradhurst Avenue
between West 149th and 150th Streets in Manhattan (Tr.[1] 282-83).
At the time, Harris had been a member of the Police Department
for five years and had participated in "buy and bust" operations
for two years (Tr. 275-81, 306).  Vargas had been a member of the
Police Department for eleven years and also had two years of
narcotics experience (Tr. 352-53).  Harris was in plain clothes
and had the role of "ghost," inconspicuously monitoring other
undercover officers while they attempted to buy drugs in the area
(Tr. 311-14).  As a ghost, Harris was equipped with a concealed

_____

[1]"Tr." refers to the transcript of petitioner's trial.

two-way radio (Tr. 313), as well as prerecorded money used to buy drugs (Tr. 282-83, 316-17, 337, 365). Vargas was acting as the arresting officer for the operation (Tr. 353, 357).

At approximately 3:30 p.m., Harris was walking between Bradhurst Avenue and West 149th and 150th Streets when he saw Adam Brown, the petitioner, seated alone on a bench (Tr. 282-83, 315, 323). Brown, an African-American male, wore a blue down coat with a bright orange lining, pale blue jeans with cuffs, brown shoes and had a moustache (Tr. 291-92, 319). Harris approached Brown and asked him if he had any "nicks," or five dollar bags of crack cocaine, for sale (Tr. 283). Brown responded to Harris, "I know a spot" (Tr. 283). Harris, in turn, handed Brown two, prerecorded five-dollar bills (Tr. 283, 323). Brown then walked across the street to 140 Bradhurst Avenue (Tr. 283). Harris had a clear, unobstructed view of petitioner's face and clothing (Tr. 292).

Harris transmitted Brown's description to his fellow field team members by radio, informed the team of his location and that he was "about to be [or] get done," meaning that he was about to purchase drugs (Tr. 291-94, 318-19, 357-58). Harris crossed the street and followed Brown into the lobby of 140 Bradhurst Avenue, from which an elevator and two staircases lead upstairs (Tr. 284-85, 292, 318-19, 324). Vargas received Harris's transmission and drove his unmarked vehicle to a position

approximately one and one-half blocks south of 140 Bradhurst
Avenue (Tr. 358-59, 370-71, 375).

As Harris entered the lobby of 140 Bradhurst Avenue,
Brown went upstairs (Tr. 284-85, 293, 324-25).  Harris testified
that he then left the building (Tr. 293-94, 325), radioed his
location to the field team and waited across the street for Brown
to return with the drugs (Tr. 293, 325).  Within a minute or two,
Brown came out of the building, walked across the street, and
handed Harris two aluminum foil "balls" containing what later
tested to be crack cocaine (Tr. 294, 347-348).  During the
exchange, Harris was again able to clearly see Brown's face and
clothing, which had not changed since the Harris first encoun-
tered Brown (Tr. 295).

After the sale was completed, Harris and Brown walked
north on Bradhurst Avenue (Tr, 294, 329, 359-60, 373).  When they
reached West 150th Street, Harris left Brown and walked east to
Eighth Avenue, where he joined another undercover officer in an
unmarked car (Tr. 296-97).

Vargas followed Harris and Brown in his unmarked van
(Tr. 360-61, 377).  Brown was still wearing the same items of
clothing previously identified by Harris:  a blue down jacket
with a bright orange lining, blue jeans, and brown shoes (Tr.
359-60, 373, 384).  No one else walked with Brown and Harris, and
there was no one else in the area with an appearance or attire

4

similar to Brown's (Tr. 295, 298, 360, 364). After Harris walked
away from Brown on West 150th Street, Vargas followed Brown one
more block, giving Harris time to leave the area (Tr. 360-61).
When Brown reached West 151st Street, Vargas stopped the van,
approached Brown, identified himself as a police officer and
asked Brown his name (Tr. 361-62, 380). Vargas detained Brown at
the corner of Bradhurst Avenue and West 151st Street, and three
to five minutes after the sale, Harris drove past the corner and
confirmed that Brown was the seller (Tr. 298-99, 330, 362-63).
Vargas then arrested Brown and searched him; he found no drugs,
no prerecorded buy money, no wallet and no identification (Tr.
363-64, 381-82).

At trial, Harris identified Brown as the man who sold
him crack cocaine (Tr. 284), and Vargas also identified Brown as
the man he arrested after seeing him walking with Harris (Tr.
363). A Police Department chemist testified that analysis of the
substance contained in the two aluminum foil balls revealed the
presence of cocaine (Tr. 340-47).

2.  The Defense's Case at Trial

Brown testified at trial to the following facts.
Between 12:30 p.m. and 1:00 p.m. on December 7, 1998, Brown
arrived at St. Nick's Pub, a jazz club and bar located at West
149th Street and St. Nicholas Avenue in Harlem, where he expected

5

to meet his girlfriend (Tr. 391-94). Brown patronized this bar
approximately five or six days per week (Tr. 393). While there,
Brown spoke with the owner, manager and a few other patrons, and
drank a bottle of beer and a shot of whiskey (Tr. 393). At
approximately 3:45 p.m., Brown left St. Nick's Pub and began his
twenty-five minute walk home to his apartment at 211-C West 151st
Street (Tr. 390, 394).

As Brown walked along Bradhurst Avenue, at the inter-
section of 151st Street and Bradhurst Avenue, he was stopped by
"two vans full of police officers" (Tr. 395-96). Brown testified
that a police officer grabbed him, put him up against a fence and
asked him, "Where is the gun" (Tr. 397, 419-20). "A lot" of
other police officers left the vans and approached Brown; how-
ever, according to Brown, the officer who grabbed Brown was not
among the officers that testified at Brown's trial (Tr. 397).
Brown alleges that the officer who grabbed him said to the
others, "Don't put the cuffs on him, we don't know if he's the
guy" (Tr. 397). Five to six minutes after Brown was stopped,
Vargas arrived on the scene (Tr. 398). Shortly after Vargas's
arrival, Brown was searched, his pockets emptied, he was told to
step out of his shoes and he was handcuffed (Tr. 398). The same
officer who grabbed Brown and held him against the fence escorted
Brown to the van after he had been handcuffed (Tr. 417). Brown

did not remember ever facing the street after he had been stopped by the police (Tr. 417-20).

When Brown was arrested, he was wearing a blue ski jacket with an orange lining, a sweatshirt, blue jeans, and burgundy or cordovan-colored shoes (Tr. 404-05). Brown was not wearing glasses and his moustache was the same as at trial (Tr. 405). Brown was not carrying any money with him when he was stopped by the police (Tr. 405). At trial, Brown testified that he had neither sold drugs not possessed any drugs. (Tr. 400, 423-25).

B.  Procedural History

Petitioner, assisted by counsel, appealed his conviction and sentence to the Appellate Division asserting three claims:  (1) that the verdict was against the weight of the evidence, (2) that, in contravention of sustained objections, the prosecutor adduced testimony and made arguments concerning street-level, drug sales operations in violation petitioner's Due Process right to a fair trial, and (3) that the sentence was excessive (Petitioner's Brief to the Appellate Division, First Department, dated January 2002 ("Pet. App. Brf."), at pp. ii, 20, 27, 33, annexed as Ex. A to Declaration of Assistant Attorney General Jennifer K. Danburg in Opposition to Petition for a Writ of Habeas Corpus, executed December 18, 2003 ("Danburg Decl.")).

The Appellate Division affirmed petitioner's conviction, finding that the "verdict was based on legally sufficient evidence and was not against the weight of the evidence," and that petitioner "was not deprived of a fair trial by police testimony concerning the roles of participants in street-level drug transactions." People v. Brown, 293 A.D.2d 302, 302, 741 N.Y.S.2d 512, 513 (1st Dep't 2002). However, the Appellate Division found the seven to fourteen year sentence excessive "as a matter of discretion in the interest of justice" and reduced Brown's sentence to a term of five to ten years. People v. Brown, supra, 293 A.D.2d at 302-03, 741 N.Y.S.2d at 513-14.

Petitioner sought leave to appeal to the New York Court of Appeals, asserting only that the verdict was against the weight of the evidence and that the testimony and argument concerning street-level narcotics transactions violated his Due Process right to a fair trial (Letter of Betsy Hutchings, Esq. to the New York Court of Appeals, dated April 15, 2002, at pp. 1-2, annexed as Ex. D to Danburg Decl.). The New York Court of Appeals denied petitioner's application for leave to appeal on June 14, 2002. People v. Brown, 98 N.Y.2d 673, 774 N.E.2d 227, 746 N.Y.S.2d 462 (2002).

III. <u>Analysis</u>

       Petitioner asserts the first two claims that he raised on direct appeal, namely:  (1) that the jury verdict was against the weight of the evidence based on irregularities in the "buy and bust" operation, inconsistences in the prosecution's testimony and petitioner's own testimony concerning his presence at the place of arrest (Pet. ¶ 13(1)), and (2) that, in spite of sustained objections, the prosecution offered testimony and argument concerning street-level, drug sales operations, thereby violating petitioner's Due Process right to a fair trial (Pet. ¶ 13(2)).

       Respondent does not dispute that these claims are exhausted (Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated December 18, 2003, at p. 9).

    A.    Standard of Review
          <u>for Exhausted Claims</u>

       Where the state court has addressed a habeas petitioner's claims on the merits, a habeas petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, the Antiterrorism and Effective Death Penalty Act of 1996 § 104 ("AEDPA"), 28 U.S.C. § 2254(d), provides that in such a situation, habeas relief may be granted only when the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained the alternative standards set forth in the portion of 28 U.S.C. § 2254(d) quoted above as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also Early v. Packer, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). . . .

> Second, respondent can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained,

>> "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Williams, supra, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

> Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003).  See also Lockyer
v. Andrade, 538 U.S. 63, 70-74 (2003); Carson v. Fischer, 421
F.3d 83, 88-89 (2d Cir. 2005); Drake v. Portuondo, 321 F.3d 338,
343 (2d Cir. 2003); Grotto v. Herbert, 316 F.3d 198, 205 (2d Cir.
2003).

In order to be entitled to the deferential standard of
review, the state court must have adjudicated petitioner's claims
"on the merits."  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir.
2001) ("For the purpose of AEDPA deference, a state court
'adjudicate[s]' a state prisoner's federal claim on the merits
when it (1) disposes of the claim 'on the merits,' and (2)
reduces its disposition to judgment."); see also Howard v.
Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cotto v. Herbert,
331 F.3d 217, 230 (2d Cir. 2003); Ryan v. Miller, 303 F.3d 231,
245 (2d Cir. 2002); Taveras v. Smith, -- F. Supp.2d --, --, 03
Civ. 1875 (SHS), 2005 WL 2218044 at *10 (S.D.N.Y. Sept. 13,
2005).  When the state court has not resolved a habeas peti-
tioner's claim on the merits, the state court's decision is
subject to de novo review.  Shabazz v. Artuz, 336 F.3d 154, 161
n.2 (2d Cir. 2003); Cotto v. Herbert, supra, 331 F.3d at 230.

In this case there is little question that the Appel-
late Division addressed petitioner's claims on the merits.  The
Appellate Division rejected both of petitioner's claims, finding:

> The verdict was based on legally sufficient evi-
> dence and was not against the weight of the evidence.

11

Issues of credibility and identification, including
inconsistencies in testimony, were properly presented
to the jury and we find no reason to disturb its deter-
minations.

Defendant was not deprived of a fair trial by
police testimony concerning the roles of participants
in street-level drug transactions, offered to explain
the absence of prerecorded buy money on him at the time
of his arrest, or by the prosecutor's comments on this
subject during his opening statement and summation.
The testimony and comment at issue were extremely brief
and carried no suggestion of large-scale drug activity.

People v. Brown, supra, 293 A.D.2d at 302, 741 N.Y.S.2d at 513.

The foregoing language clearly demonstrates that the

Appellate Division addressed the substance of petitioner's claims

and does not even suggest that procedural deficiencies played any

role in the court's decision.

In light of the language used by the Appellate Divi-

sion, I conclude that the state court did resolve petitioner's

claims on the merits and the decision of the state court is,

therefore, entitled to the deferential standard of review set

forth in Section 2254(d).

B.    The Weight of
      the Evidence

Petitioner argues that the evidence against him was

insufficient or, in the alternative, that the weight of the

evidence did not support the verdict based on: (1) irregularities

in the "buy and bust" operation that lead to his arrest, (2)

petitioner's own testimony concerning the events preceding his

arrest, and (3) inconsistencies in the testimony of Detectives
Harris and Vargas (Pet. App. Br. at pp. 20-26).  As to the
putative inconsistencies, petitioner argues, in essence, that
Harris and Vargas gave conflicting testimony with respect to
whether Harris and Brown left 140 Bradhurst Avenue separately, as
Harris testified (Tr. 293-94, 325), or together, as Vargas
testified (Tr. 359, 372).

      To the extent petitioner is arguing that his conviction
was against the weight of the evidence, he has failed to state a
cognizable federal claim and, therefore, habeas relief is un-
available.  A fundamental aspect of habeas corpus review is that
only violations of federal law are cognizable in a federal habeas
corpus proceeding; a violation of state law provides no basis for
habeas relief.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S.
62, 67-68 (1991)("[F]ederal habeas corpus relief does not lie for
errors of state law.  Today, we reemphasize that it is not the
province of a federal habeas court to reexamine state-court
determinations on state-law questions." (internal quotations and
citations omitted)); <u>Howard v. Walker</u>, <u>supra</u>, 406 F.3d at 121
(same); <u>DiGuglielmo v. Smith</u>, 366 F.3d 130, 137 (2d Cir.
2004)(same); <u>Urena v. Lape</u>, 373 F. Supp.2d 449, 454 (S.D.N.Y.
2005)(same); <u>Smith v. Artus</u>, 03 Civ. 9819 (AKH), 2005 WL 1661104
at *7 (S.D.N.Y. July 14, 2005)(same).

As explained in <u>Correa v. Duncan</u>, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001), a claim that a verdict is against the weight of the evidence is purely a state law claim that is not cognizable in a federal habeas corpus proceeding:

> Correa argues that the guilty verdict was against the weight of the evidence.  This claim is distinct from an attack on a verdict based on the legal sufficiency of the evidence.  A "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles.  <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reasonable doubt); <u>See</u> <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987) (weight of the evidence is based on court's factual review power; sufficiency of evidence claim based on the law).  Accordingly, the Court is precluded from considering the claim.  <u>See</u> 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (habeas corpus review is not available where there is simply an alleged error of state law).

<u>See also</u> <u>Ex parte Craig</u>, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of the evidence"), <u>aff'd</u>, 263 U.S. 255 (1923); <u>Feliz v. Conway</u>, 378 F. Supp.2d 425, 430 n.3 (S.D.N.Y. 2005); <u>Keane v. New York State Div. of Parole</u>, 04 CV 2070 (CBA), 2005 WL 1594200 at *2 n.1 (E.D.N.Y. July 5, 2005); <u>Brown v. Filion</u>, 03 Civ. 5391 (DLC)(GWG), 2005 WL 1388053 at *12 (S.D.N.Y. June 13, 2005) (Report & Recommendation); <u>Roman v. Filion</u>, 04 Civ. 8022

(KMW)(AJP), 2005 WL 1383167, *30 (S.D.N.Y. June 10, 2005) (Report & Recommendation).

Moreover, even if I were to construe petitioner's claim to assert that the evidence is insufficient to sustain the verdict and make the further assumption that this claim was properly exhausted, the claim still fails. In reviewing an insufficiency claim,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)(citations omitted); Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002)("Petitioner bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence."); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000)(same); Anderson v. Goord, 03 Civ. 0905 (PKC), 2005 WL 2298157 at *4 (S.D.N.Y. Sept. 20, 2005)(same).

Petitioner was convicted of criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39(1), which requires proof of the following three elements:  (1) that petitioner sold a narcotic drug, such

as cocaine; (2) that the substance sold was, in fact, cocaine;
and (3) that petitioner did so knowingly and unlawfully.  See,
e.g., Butler v. Wilkerson, 94 CV 3071 (RR), 1999 WL 167712 at *3
(E.D.N.Y. Jan. 14, 1999), citing People v. Wheeler, 220 A.D.2d
288, 288, 632 N.Y.S.2d 133, 134 (1st Dep't 1995).  There was
sufficient testimony to establish these elements.  Detective
Harris testified that in exchange for $10, Brown retrieved and
handed him two aluminum foil "balls" of cocaine (Tr. 283, 294,
323).  A Police Department chemist testified that a subsequent
analysis of the substance contained in the two aluminum foil
balls revealed the presence of cocaine (Tr. 340-47).  At trial,
Detective Harris identified petitioner as the person who sold him
the crack cocaine (Tr. 284).  Detective Harris described in
detail petitioner's physical appearance, clothing and location to
the other officers in his team, including Detective Vargas (Tr.
291-94, 318-19, 357-58).  In turn, Detective Vargas promptly
located Harris and petitioner, based on the description Harris
provided, and followed petitioner (Tr. 358-60, 364, 370-71, 375).
Detective Harris subsequently viewed petitioner and confirmed to
Detective Vargas that petitioner was the person who sold him the
cocaine prior to Detective Vargas arresting petitioner (Tr. 362-
63).  This testimony was sufficient to sustain the conviction.
See, e.g., United State v. Frampton, 382 F.3d 213, 222 (2d Cir.
2004) ("We note, however, that 'the testimony of a single,

uncorroborated eyewitness is generally sufficient to support a conviction.'"), quoting United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979), and citing 7 Wigmore, Evidence § 2034 (Chadbourn rev. 1978) ("In general, the testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence upon which the jury may found a verdict.").

Petitioner's specific arguments also do not alter the foregoing conclusion.  First, petitioner argues that the evidence was insufficient because Detective Vargas allegedly "fabricated testimony regarding his opportunity to observe the seller as an attempt to salvage the operation" based on a "complete breakdown in the buy and bust procedure" (Pet. App. Brf. at p. 21). Petitioner takes issue with Harris's changing roles from ghost to buyer, purportedly deviating from standard police procedures, in order to solicit drugs from petitioner (Pet. App. Brf. at pp. 21-23, 26).  Whatever impact Harris's change of role had on the weight of the evidence, if any, was a question for the jury.  It provides no basis for habeas relief.  See United States v. Gonzales, 110 F.3d 936, 941 (2d Cir. 1997) (weight of the evidence is for the jury to decide); Callender v. McGuiness, 05 Civ.942 (KMW)(GWG), 2005 WL 2461808 at *8 (S.D.N.Y. Oct. 6, 2005) (Report & Recommendation) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and

thus a habeas court will defer to the jury's assessments of both
of these issues." (internal quotation marks omitted)).

Second, petitioner claims that Detectives Harris's and
Vargas's testimony was inconsistent because Detective Harris
testified that he and Brown left 140 Bradhurst Avenue separately
(Tr. 293-94, 325), while Vargas testified that Harris and Brown
left 140 Bradhurst Avenue together (Tr. 359, 372; see also Pet.
App. Brf. at pp. 20, 24). As noted above, the resolution of
inconsistencies in a witness's testimony is a classic jury
function; the presence of such inconsistencies does not render
the evidence insufficient to support a conviction. See
Quartararo v. Hanslmaier, 186 F.3d 91, 95, 96 (2d Cir. 1999)
(federal habeas courts must not assume "the position of a thir-
teenth juror;" in turn, "inconsistencies were for the jury to
resolve" not the district court), citing Herrera v. Collins, 506
U.S. 390, 401 (1993). Accord, e.g., Brown v. Filion, supra, 2005
WL 1388053 at *13 (a "habeas court will not reevaluate [a] jury's
choice to credit eyewitness's testimony notwithstanding alleged
inconsistencies"), citing Manning v. Walker, 99-CV-5747 (JG),
2001 WL 25637, at *5-*6 (E.D.N.Y. Jan. 3, 2001); Messiah v.
Duncan, 99 Civ. 12178 (RCC)(HBP), 2004 WL 1924791 at *7 (S.D.N.Y.
Aug. 27, 2004) ("Petitioner's arguments concerning the discrepan-
cies in the officers' descriptions are insufficient for habeas
relief."); Wilson v. Senkowski, 02 Civ. 0231 (HB)(AJP), 2003 WL

21031975 at *11 (S.D.N.Y. May 7, 2003) ("Even if there had been major inconsistencies in the prosecution witnesses' testimony -- which there [were] not -- that would not change the result."); see also Ferguson v. Walker, 00 Civ. 1356 (LTS)(AJP), 2002 WL 31246533 at *9 (S.D.N.Y. Oct. 7, 2002) (upholding jury verdict against petitioner despite inconsistent testimony); Simpson v. Portuondo, 01 Civ. 1379 (BSJ)(AJP), 2001 WL 830946 at *7-*8 (S.D.N.Y. July 12, 2001) (Report & Recommendation) (same); Roldan v. Artuz, 78 F. Supp.2d 260, 269 (S.D.N.Y. 2000) (same).

Finally, petitioner argues that the evidence was insufficient in light of his own exculpatory testimony. This argument is misguided in two respects. First, "the resolution of issues of credibility is exclusively the province of the jury." United States v. Shulman, 624 F.2d 384, 388 (2d Cir. 1980); see also United States v. Frampton, supra, 382 F.3d at 221 ("It is well-established that the evaluation of witness credibility is a function of the jury . . . "); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) ("'[A] conviction may be based upon circum- stantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'"), quoting United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993); Feliz v. Conway, supra, 378 F. Supp.2d at 430 (same). Second, "[t]he problem with [petitioner's] argument is that it relies only on the defense case, viewed in light most

favorable to [petitioner], and ignores the prosecution's evidence". Roldan v. Artuz, supra, 78 F. Supp.2d at 268. "[A] federal habeas court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Feliz v. Conway, supra, 378 F. Supp.2d at 430, citing Jackson v. Virginia, supra, 443 U.S. at 326. Thus, even to the extent that the petition can be construed as asserting a cognizable federal claim, his insufficiency claim fails on the merits.

C.    Petitioner's Claims of
      Prosecutorial Misconduct Are Meritless

Petitioner next asserts that prosecutorial misconduct violated his Due Process right to a fair trial. Specifically, petitioner claims that the prosecution improperly offered argument and testimony concerning street-level drug sales organizations during trial. This claim is also insufficient to warrant habeas relief.

Petitioner argues that the prosecutor's reliance on such argument and testimony was improper because the Trial Court had sustained petitioner's objections to such material (Pet. App. Brf. at pp. 27-33). Namely, petitioner argues that: (1) during the People's opening statement, the prosecutor improperly made

reference to "different people with different roles," "the drug organization" and "these street level narcotics operations" (Tr. 264); (2) during direct examination of Detectives Harris and Vargas, the prosecutor improperly asked questions that elicited testimony concerning "people [having] different roles" (Tr. 285), "three individuals working" together (Tr. 365) and "two other individuals" involved in this sort of transaction (Tr. 368); and (3) during summation, the prosecutor improperly made reference to "these groups," commented on Brown being one of "three players," and remarked that Brown's "role" was "the face of the drug dealing operation" (Tr. 492-93, 521).

A prosecutor's comments or argument during trial will justify habeas relief only when they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Bossett v. Walker, supra, 41 F.3d at 829 (2d Cir. 1994) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus 'is the narrow one of due process, and not the broad exercise of supervisory power.'"), quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990), quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986). Accord Greer v. Miller, 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be 'of

sufficient significance to result in the denial of the defendant's right to a fair trial.'"), quoting United States v. Bagley, 473 U.S. 667, 676 (1985).

In order to justify federal habeas relief, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict. Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Escobar v. Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005) (same), quoting Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998).

Courts in this Circuit have considered the following non-exhaustive factors in assessing whether prosecutorial misconduct resulted in actual prejudice to a criminal defendant: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley v. Scully, supra, 41 F.3d at 824, citing Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991); see also United States v. Millar, 79 F.3d 338, 343 (2d Cir. 1996); Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990); United States v.

Modica, 663 F.2d 1173, 1181 (2d Cir. 1981). These mitigating factors are present here.

The prosecutor's conduct was not severe. The Appellate Division noted that "the testimony and comments at issue were extremely brief and limited and carried no suggestion of large-scale drug activity." People v. Brown, supra, 293 A.D.2d at 302, 741 N.Y.S.2d at 513; accord Tankleff v. Senkowski, supra, 135 F.3d at 253 ("[T]he severity of the prosecutor's misconduct in [petitioner's] case was mitigated by the brevity and fleeting nature of the improper comments."); Escobar v. Senkowski, supra, 2005 WL 1307939 at *15 ("[A] prosecutor's improper comments during summation must be more than short and fleeting, but must instead be so numerous and, in combination, so prejudicial that a new trial is required." (internal quotations omitted)). Brief and limited instances of improper argument by the prosecution during its opening statement and summation do not ordinarily warrant habeas relief. Donnelly v. DeChristoforo, supra, 416 U.S. at 646 ("isolated passages" of prosecutor's argument, while improper, did not merit habeas relief); Kaiser v. New York, 394 U.S. 280, 281 n.5 (1969) (same). Also, the trial judge found that some of the prosecutor's questions were proper, overruling some of the petitioner's objections and allowing limited testi-mony to explain petitioner's lack of buy money and drugs at the

time of his arrest (Tr. 290, 368). The Appellant Division
affirmed this narrow line of questioning:

> Defendant was not deprived of a fair trial by
> police testimony concerning the roles of participants
> in street-level drug transactions, offered to explain
> the absence of prerecorded buy money on him at the time
> of his arrest, or by the prosecutor's comments on this
> subject during his opening statement and summation. . .
> . Furthermore, evidence that the defendant took the
> buy money into a building, remained several minutes,
> and returned with drugs permitted several competing
> inferences, one of which was that defendant had one or
> more accomplices in the building.

People v. Brown, supra, 293 A.D.2d at 302, 741 N.Y.S.2d at 513.

Accord Thomas v. Breslin, 01 Civ. 6657 (RMB)(AJP), 2002 WL 22015
at *7 (S.D.N.Y. Jan. 9, 2002) ("It is well established under New
York law that background testimony by the arresting officer
regarding the mechanics of street level drug sales is admissible
to explain 'the absence of drugs or buy money on defendant at the
time of the arrest.'"), quoting People v. Kelsey, 194 A.D.2d 248,
252-53, 606 N.Y.S.2d 621, 624 (1st Dep't 1994). All of the
foregoing mitigates the severity of the prosecutor's conduct.

With respect to the steps taken to remedy any possible
prejudice, the trial judge moved quickly and "sustained most of
defendant's objections to this matter," People v. Brown, supra,
293 A.D.2d at 302, 741 N.Y.S.2d at 513. The trial judge
contemporaneously instructed the jury, separate from her jury
charge, to disregard any testimony or comments made by the
prosecution that concerned matters relating to sustained objec-

24

tions (Tr. 495-46).  Improper commentary by the prosecution does not warrant habeas relief "if the trial court sustains objections, strikes offending comments, and issues appropriate curative instructions in response." Escobar v. Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16 (S.D.N.Y. May 26, 2005), citing United State v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000) ("[A]ny prejudice that might arguably have been caused by these remarks was sufficiently dispelled by the district court's prompt responses and by its final instructions to the jury."); George v. Edwards, Nos. 01-CV-6481 (JBW), 03-MISC-0066 (JBW), 2003 WL 22964391 at *6 (E.D.N.Y. Sept. 4, 2003) ("In the instant case, an objection was made and sustained and a curative instruction was given. It cannot be said that petitioner was denied a fundamentally fair trial . . ."). But see United States v. Modica, supra, 663 F.2d at 1182 (without more, "[t]he court's pattern instruction to the jury -- that the arguments of counsel are not to be considered evidence -- was proper, but was an insufficient response to the prosecutor's conduct.").  There is no reason to believe that the jury in this case did not disregard the stricken testimony and commentary as contemporaneously instructed by the trial judge.  See Greer v. Miller, supra, 483 U.S. at 765 n.8 ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability'

that the jury will be unable to follow the court's instruc-
tions.").

Petitioner has also failed to demonstrate that the
prosecutor's misconduct had a substantial or injurious effect or
influence on the jury's verdict.  As outlined above in the
section dealing with petitioner's weight and sufficiency of the
evidence claim, Detective Harris's eyewitness testimony of the
drug sale, standing alone, supports the guilty verdict.  In light
of the strong evidence of guilt presented at trial, coupled with
the fact that the prosecutor's comments were "extremely brief and
limited and carried no suggest of large-scale drug activity,"
People v. Brown, supra, 293 A.D.2d at 302, 741 N.Y.S.2d at 513,
petitioner has failed to establish that the prosecutor's conduct
had a substantial or injurious effect or influence on the jury's
verdict.  See, e.g., Tankleff v. Senkowski, supra, 135 F.3d at
252 ("[We] are not prepared to say that this is a case in which
the evidence was so closely balanced that the prosecutor's
comments were likely to have had a substantial effect on the
jury."); Bentley v. Scully, supra, 41 F.3d at 825 ("Because of
the compelling evidence in the prosecution's case against [peti-
tioner], as well as the fact that the prosecutor's summation
comments were both brief and isolated, we find that [petitioner]
has failed to demonstrate that the prosecutor's misconduct had a

substantial or injurious effect or influence on the jury's
verdict.").

    Finally, when analyzing the prosecution's improper
argument during summation for possible substantial or injurious
effect or influence on the jury's verdict, the prosecution's
argument cannot be examined in a vacuum.  Rather, the prosecu-
tion's argument must be reviewed in the context of the defense's
summation that preceded it.  See, e.g., Shannon v. Senkowski, 00
Civ. 2865 (NRB), 2000 WL 1683448 at *7 (S.D.N.Y. Nov. 9,
2000)("In determining the unfairness caused by a prosecutor's
improper comments, courts must consider the comments in the
broader context of the entire argument before the jury." (inter-
nal quotation marks omitted)); see also Greer v. Miller, supra,
483 U.S. at 765-66, quoting Darden v. Wainwright, supra, 477 U.S.
at 179 ("It is helpful as an initial matter to place [the prose-
cution's] remarks in context. . . . The prosecutors' comments
must be evaluated in light of the defense argument that preceded
it. . . ."). Improper argument by the prosecution during summa-
tion -- although not excused -- is less likely to be found
actually prejudicial to the trial's fairness where the defense's
summation invites the prosecution's response.  As the Supreme
Court explained in United States v. Young, 470 U.S. 1 (1985),
"the idea of 'invited response' is used not to excuse improper
comments, but to determine their effect on the trial as a whole."

Darden v. Wainwright, supra, 477 U.S. at 182; see also Escobar v.
Senkowski, supra, 2005 WL 1307939 at *14 (noting "that where the
defense's summation invites a particular response from the
prosecution, such a response is less likely to jeopardize the
trial's fairness").  Here, the defense's summation specifically
raised the issue of no prerecorded buy money being found on
petitioner (Tr. 476-78), which, in turn, invited the prosecution
to proffer some explanation in response during its summation.
When viewed in the context of the defense argument that preceded
it, the prosecution's argument did not have a substantial and
injurious effect on the trial's fairness, and thus does not
warrant habeas relief.

        Therefore, in light of the foregoing, I find that the
prosecutor's questions and comments did not have a substantial or
injurious effect or influence on the jury's verdict as to deny
the petitioner his Due Process right to a fair trial.

## IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

        In addition, since petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued.  28
U.S.C. § 2253(c).  To warrant the issuance of certificate of

appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys General of States of N.Y. & Pennsylvania</u>, 396 F.3d 207, 209 (2d Cir. 2005) (<u>per</u> <u>curiam</u>)(quotation marks omitted); <u>see also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005) (<u>per curiam</u>). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

V. <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District

Judge, Room 2102, 40 Centre Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJEC-TIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 & n.2 (2d Cir. 1983).

Dated:  New York, New York
        October 28, 2005

                                Respectfully submitted,

                                HENRY PITMAN
                                United States Magistrate Judge

Copies mailed to:

Mr. Adam R. Brown
131 Moore Street
Apt. 3H
Brooklyn, New York 11206

Jennifer K. Danburg, Esq.
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway - 24th Floor
New York, New York 10271